Church, Ch. J.
 

 The contract was for the sale and delivery of specific articles of personal property. Each bale sold was designated by a particular mark, and there is nothing in the case, to show that these marks were used merely to distinguish the general kind or quality of the article, but they seem to have been used to describe the particular bales of cotton then in possession of the defendant. Kor does it appear that there were other bales of cotton in the market of the same kind, and marked in the same way. The plaintiff would not have been obliged to accept any other cotton than the bales specified in the bought note.
 

 
 *64
 
 The contract was executory, and various things remained to be done to the 161 bales in question by the sellers before delivery. The title, therefore, did not pass to the vendee, but remained in the vendor.
 
 (Joice
 
 v.
 
 Adams,
 
 8 N. Y., 291.)
 

 This action was brought by the purchaser against the vendor to recover damages for the non-delivery of the cotton, and the important and only question in the case is, whether upon an agreement for the sale and delivery of specific articles of personal property, under circumstances where the title to the property does not vest in the vendee, and the property is destroyed by an accidental fire before delivery without the fault of the seller, the latter is liable upon the contract for damages sustained by the purchaser.
 

 The general rule on this subject is well established, that where the performance of a duty or charge created by law is prevented by inevitable accident without the fault of the party he will be excused, but where a person absolutely contracts to do a certain thing not impossible or unlawful at the time, he will not be excused from the obligations of the contract unless the performance is made unlawful, or is prevented by the other party.
 

 Neither inevitable accident, nor even those events denominated acts of God will excuse him, and the reason given is that he might have provided against them by his contract.
 
 (Paradine
 
 v.
 
 Tone,
 
 Alleyn,
 
 27; Harmony
 
 v.
 
 Bingham,
 
 12 N. Y.,
 
 99; Tompkins
 
 v.
 
 Dudley,
 
 25 N. Y., 272.)
 

 But there are a variety of cases where the courts have implied a condition in the contract itself, the effect of which was to relieve the party when the performance had, without his fault, become impossible; and the apparent confusion in the authorities, has grown out of the difficulty in determining in a given case whether the implication of a condition should be applied or not, and also in some cases in placing the decision upon a wrong basis. The relief afforded to the party in the cases referred to, is not based upon exceptions to the general rule, but upon the construction of the contract.
 

 For instance, in the ease of an absolute promise to marry,
 
 *65
 
 the death of either party discharges the contract, because it is inferred or presumed that the contract was made upon the condition that both parties should live.
 

 So of a contract made by a painter to paint a picture, or an author to compose a work, or an apprentice to serve his master a specified number of years, or in any contract for personal services dependent upon the life of the individual making it, the contract is discharged upon the death of the party, in accordance with the condition of continued existence, raised by implication. (2 Smith’s Leading Oases, 50.)
 

 The same rule has been laid down as to property: “ As if A agrees to sell and deliver his horse Eclipse to B on a fixed future day, and the horse die in the interval, the obligation is at an end.” (Benjamin on Sales, 424.) In replevin for a horse, and judgment of
 
 retorno
 
 hábendo, the death of the horse was held a good plea in an action- upon the bond. (12 Wend., 589.) In
 
 Taylor
 
 v.
 
 Caldwell.
 
 (113 E. C. R., 824), A agreed with B to give him the use of a music hall on specified days,*for the purpose of holding concerts, and before the time arrived the building was accidentally burned; held, that both parties were discharged from the contract. Blackbuex, J., at the close of his opinion, lays down the rule as follows:
 
 “
 
 The principle seems to us to be, that in contracts in which the performance depends on the continued existence of a given person or thing, a condition is implied that the impossibility of performance, arising from the perishing of the person or thing, shall excuse the performance.” And the reason given for the rule is, “ because from the nature of the contract, it is apparent that the parties contracted on the basis of the continued existence of the particular person or thing.”
 

 In
 
 School District, No.
 
 1 v.
 
 Dauchy
 
 (25 Conn., 530), the defendant had agreed to build a school-house by the first of May, and had it nearly completed on the twenty-seventh of April, when it was struck by lightning and burned; and it was held, that he was liable in damages for the non-performance of the contract. But the court, while enforcing, that
 
 *66
 
 general rule in a case of evident hardship, recognizes the rule of an implied condition in case of the destruction of the specific subject-matter of the contract; and this is the rule of the civil law,
 

 (Pothier on Contracts and Sale, art. 4, § 1, p. 31.) We were referred to no authority against this rule. But the learned counsel for the appellant, in his very able and forcible argument, insisted that the general rule should be applied in this case. While it is difficult to trace a clear distinction between this case and those where no condition has been implied, the tendency of the authorities, so far as they go, recognize such a distinction, and it is based upon the presumption that the parties contemplated the continued existence of the subject-matter of the contract.
 

 The circumstances of this case are favorable to the plaintiff. The property was merchandise sold in the market. The defendant could, and from the usual course of business, we may infer, did protect himself by insurance; but in establishing rules of liability in cbmmercial transactions, it is far more important that they should be uniform and certain than it is to work out equity in a given case. There is no hardship in placing the parties (especially the buyer) in the position they were in before the contract was made. The buyer can only lose the profits of the purchase; the seller may lose the whole contract price, and if his liability for non-delivery should be established, the enhanced value of the property. After considerable reflection, I am of the opinion that the rule here indicated of an implied condition in case of the destruction of the property, bargained without fault of the party, will operate to carryout the intention of the parties under most circumstances, and will be more just than the contrary rule. The buyer can of course always protect himself against the effect of the implied condition, by a provision in - the contract that the property shall be at the risk of the seller.
 

 Upon the grounds upon which this rule is based of an implied condition, it can make no difference whether the pro
 
 *67
 
 porty was destroyed by an inevitable accident, or by an act of God, the condition being that the property shall continue to exist. If we were creating an exception to the general rule of liability, there would be force in the considerations urged upon the argument, to limit the exception, to cases where the property was destroyed by the act of God, upon grounds of public policy, but they are not material in adopting a rule for the construction of the contract so as to imply a condition that the property was to continue in existence. It can make no difference how it was destroyed, so long as the party was not in any degree in fault. The minds of the parties are presumed to have contemplated the possible destruction of the property, and not the manner of its destruction ; and the supposed temptation and facility of the seller to destroy the property himself, cannot legitimately operate to affect the principle involved.
 

 The judgment must be affirmed.
 

 Allen, Gboveb and Rapallo, JJ., concur; Peckiiam and Folgeb, JJ., dissent.
 

 Judgment affirmed.