GEORGE E. ARCHER, APPELLANT AND RESPONDENT, *v.* LEONARD G. McDONALD AND OTHERS, APPELLANTS AND RESPONDENTS.

*Entire contract — when no recovery can be had on a partial performance.*

The plaintiff agreed to store in a warehouse from fifteen to thirty thousand barrels of lime, to be delivered on the plaintiff's dock, after October fifteenth, and to be by the plaintiff received and taken to his warehouse, and there piled and kept until the first of the following May, on or before which date the plaintiff, as the lime was called for, was to take it from the warehouse and deliver it at the end of the wharf in good order. For said storing, and such coopering as might be necessary, and for the delivery, the defendant was to pay the sum of fifteen cents for each barrel. Before November twenty-fifth some 22,000 barrels had been received. On January seventh the warehouse was destroyed by fire, without any negligence on the part of the plaintiff, and the

lime, slaked by the water used in extinguishing the fire and by subsequent rains, was left lying on the dock.

*Held,* that the contract for storage was an entirety, and that, as the plaintiff had not fully performed it, he could not recover the amount agreed to be paid nor any portion thereof.

At the time the lime was delivered the defendant advanced $1,000 on account of the storage.

*Held,* that the plaintiff could not retain this amount.

APPEAL from a judgment in favor of the plaintiff, entered upon the trial of this action by the court without a jury.

By contract dated March 17, 1873, it was agreed that the plaintiff Archer would receive from defendants' company on storage in his stores from fifteen to thirty thousand barrels of lime, to be delivered on the plaintiff's dock after October fifteenth in each year, and to be taken away from said dock on or before the first of May following; plaintiff agreeing to receive the lime on the dock, take it in trucks therefrom, and safely pile and tier it in said warehouse belonging to the said Archer, and on or before the first day of May to take it from said storehouses, when it might be called for, and deliver it on trucks at the end of the wharf in good order, and do all necessary coopering; the company agreeing to furnish all necessary hoops and headings, and if the barrels became broken or damaged to furnish extra barrels; for the said storing, coopering and delivering, as hereinbefore specified, the company was to pay fifteen cents a barrel. The contract was to continue for five years. Between October 27 and November 25, 1876, the defendants delivered 22,284 barrels of lime, which the plaintiff stored, the storage on which at the contract-price would be $3,340.60. During the fall of 1876 the defendants paid $1,000 on account. January 7, 1877 the warehouse was burned from an unknown cause. The jury found that the plaintiff was not negligent in the matter. The fire department played on the lime and slaked the outside, the center remaining good. Slaked lime is of little commercial value, but this still remained lime, constituting a large heap, and distinguishable as the lime which had been stored by defendants. The defendants refused to furnish barrels, or to accept the lime, on the ground that it was not in the condition in which it was when stored, and about April 1, 1877, notified the plaintiff that they abandoned it. The plaintiff urged them to remove

it, but they did not. It remained on the plaintiff's premises from May 1, 1877, rendering them useless for any other purpose. The court awarded the plaintiff $424.37 on the ground that the fire rendered the performance of the contract impossible, and entitled the plaintiff to a *quantum meruit* up to that time, but that no duty relied upon the defendant to remove the ruined lime. From the judgment entered on this decision both parties appeal.

*George W. Wingate,* for the plaintiff.

*S. Brown,* for the defendants.

BARNARD, P. J.:

The case does not show any facts upon which it is proper to mitigate the rule that a contract entire in its nature must be fully performed before any claim can be made under it. The plaintiff agreed to store the defendant's lime at a specified price per barrel, which price was to include cartage to and from the dock on the warehouse property. The delivery and removal was to be made between the fifteenth of October and the first of the following May, during the time covered by the contract. The lime was received in store, and the storehouse burned down in January with all the lime in it. The lime was ruined as merchantable lime; and the point taken that the contract was performed because it was still lime has no merit. There are a class of cases which hold that the contract is to be considered as having been made upon the implied agreement that the subject should continue to exist, and that if the subject is destroyed by fire the performance of the contract is excused. *Dexter* v. *Norton* (47 N. Y., 62) is one of this class of cases. It can be seen by an examination of this case that the contract was for a sale and when the title was in vendor Accidental burning of the goods was held to excuse performance. This case is not sustained by the like one of *Booth* v. *Spuyten Duyvil Rolling Mill* (60 N. Y., 487). A fire in that case was not held to be an excuse for non-performance of a contract to manufacture goods. The court recurs to the old rule that if a contingency is to be provided for which shall excuse performance, it "should have been provided for in the contract." The exceptional cases are put upon the construction of the contract. In the present case it can-

not be construed so that the defendant shall lose his goods and pay the warehouse bill for storage before the destruction of it by fire. This would not put the parties as they were before the fire. The storage is not earned before the contract is performed by a redelivery of the property during the contract term. Of what use was the storage to the defendants short of the redelivery of the property? If the fire was accidental, and without the plaintiff's fault, he is excused from performance, but he cannot recover storage short of full performance. (*N. Y. Cent. and H. R. R. R. Co.* v. *Standard Oil Co.*, 87 N. Y., 486.) If the plaintiff did not wish to risk his storage, he could have protected himself by insurance. If he took the risk of fire, he cannot claim storage for burned property which he agreed to keep and redeliver at a date subsequent to the fire.

The judgment should be reversed and a new trial granted, costs to abide event.

The answer of the defendant does not claim the return of the $1,000 paid on account of the storage. If the contract be an entire one, and not performed, the plaintiff cannot keep this payment.

DYKMAN, J., concurred ; PRATT, J., not sitting.

Judgment reversed and new trial granted, costs to abide event.